IN RE K.D.

[178 N.C. App. 322 (2006)]

IN THE MATTER OF: K.D., MINOR CHILD

No. COA05-1027

(Filed 5 July 2006)

**1. Appeal and Error— preservation of issues—psychologist-patient privilege—failure to object on basis of privilege—waiver**

Although respondent mother contends the trial court violated her psychologist-patient privilege in a child neglect case by considering evidence in the form of a letter and testimony of a psychologist, she failed to preserve this question for appellate review, because: (1) although respondent objected to various statements that the psychologist made during the hearing and to admission of the letter from the psychologist to respondent mother's social worker, she did not object on the basis of privilege but instead based on hearsay and expert qualifications; (2) respondent's failure to object to the psychologist's testimony on the basis of privilege amounted to a waiver of her right to claim the psychologist-client privilege on appeal; (3) the psychologist-patient privilege does not operate to exclude evidence regarding the abuse or neglect of a child; and (4) N.C.G.S. § 8-53.3 permits the trial judge to compel disclosure of otherwise privileged information if in his or her opinion disclosure is necessary to a proper administration of justice.

**2. Child Abuse and Neglect— neglect—sufficiency of evidence**

The trial court did not err by adjudicating a minor child as neglected, because: (1) although respondent mother assigned error to the adjudication order's first finding of fact, her brief failed to contain any argument challenging the first finding of fact which is thus deemed abandoned under N.C. R. App. P. 28(a); (2) as for the remaining assignments of error in the adjudication order, a single assignment of error generally challenging the sufficiency of evidence to support numerous findings of fact is broadside and ineffective; and (3) respondent's struggles with her parenting skills, domestic violence, and anger management, as well as her unstable housing situation, have the potential to significantly impact her ability to provide proper care, supervision, or discipline for the minor child.

**IN RE K.D.**

[178 N.C. App. 322 (2006)]

**3. Child Abuse and Neglect— dependency—sufficiency of evidence—alternative child care arrangement**

The trial court erred in a child abuse case by adjudicating the minor child as dependent, and the case is remanded for further findings as to whether the mother lacks an appropriate alternative child care arrangement for the child, where the mother had voluntarily placed the child with an aunt. N.C.G.S. § 7B-101(9).

Appeal by respondent mother from orders entered 1 March 2005 by Judge Resson Faircloth in Johnston County District Court. Heard in the Court of Appeals 7 March 2006.

*Jennifer S. O'Connor for petitioner-appellee.*

*Leslie C. Rawls for respondent-appellant.*

*James D. Johnson, Jr. for guardian ad litem.*

GEER, Judge.

Respondent mother appeals from the trial court's orders adjudicating her son K.D. to be neglected and dependent, placing him with an aunt, and relieving the Johnston County Department of Social Services ("DSS") of further efforts towards reunification. On appeal, respondent mother primarily argues that the trial court violated her psychologist-patient privilege by considering evidence from her psychologist. We hold that respondent mother waived any privilege, and, in any event, the evidence at issue was admissible since this proceeding involves the neglect of a child. With respect to respondent mother's challenge to the trial court's adjudication order, we (1) affirm the adjudication of K.D. as neglected because the trial court's unchallenged findings of fact support its conclusions of law on neglect, but (2) reverse and remand as to the adjudication of K.D. as dependent because the trial court failed to address whether respondent mother was able to provide a suitable alternative childcare arrangement within the meaning of N.C. Gen. Stat. § 7B-101(9) (2005).

Factual and Procedural History

Respondent mother gave birth to her son K.D. in 2002. The identity of the child's father is unknown. On 9 March 2004, the police brought respondent mother to the emergency room of the Johnston County Mental Health Center ("JCMHC"). While there, she was assessed by staff psychologist Cynthia Koempel, who found that she was showing verbal aggressiveness toward those around her and was

threatening the police officer who had escorted her to the emergency room. Respondent mother was involuntarily committed to Holly Hill Hospital later that day because she was threatening to kill herself and was sleeping with knives under her pillow.

Respondent mother was discharged from Holly Hill on 17 March 2004, with a diagnosis of adjustment disorder with mixed depression and anxiety. Holly Hill recommended that she continue to receive treatment at JCMHC. Following a subsequent intake assessment at JCMHC, respondent mother was further diagnosed with intermittent explosive disorder, meaning that her inability to resist her aggressive impulses was liable to result in serious assaultive acts or destruction of property without warning. The JCMHC assessment also indicated that she had moderate mental retardation, with school records estimating her IQ to be in the 40 to 50 range. Following her intake assessment, respondent mother did not attend any of her subsequent recommended appointments at JCMHC. Although she initially claimed transportation problems, she later admitted that her social worker had offered to provide transportation to these and other appointments.

DSS began working with respondent mother in April 2004 when she was 17 years old and living with her mother, J.T. On 6 April 2004, DSS substantiated respondent mother's neglect of K.D. based on respondent mother's history of leaving K.D. at home without ensuring appropriate supervision or telling her family where she was going. After DSS became involved, respondent mother voluntarily placed K.D. with J.T. and moved in with her boyfriend.

Following a physical altercation between respondent mother and the boyfriend, in which the boyfriend sustained a large knife wound, respondent mother began living with other relatives, including, at various times, her maternal grandmother and her sister. Meanwhile, DSS substantiated neglect of K.D. by his grandmother J.T., after DSS became aware he was not being supplied with basic needs, such as adequate clothing, shoes, and hygiene, and after J.T. twice arrived in an intoxicated state to pick K.D. up from daycare. K.D. was subsequently placed back with respondent mother, who was then living with her sister.

On 5 May 2004 and 23 July 2004, DSS entered into a case plan with respondent mother in which she agreed to begin treatment at JCMHC; attend parenting classes; ensure proper supervision of K.D. at all times; meet K.D.'s basic food, clothing, and hygiene needs; and take

IN RE K.D.

[178 N.C. App. 322 (2006)]

K.D. to all necessary medical appointments. Because of respondent mother's mental disabilities and retardation, respondent mother's social worker provided her with a laminated list of emergency phone numbers and an appointment chart.

Respondent mother failed to comply with most of the requirements of the initial case plan, as well as a follow-up case plan. Specifically, she failed to attend mental health appointments at JCMHC, failed to attend scheduled parenting classes at DSS, and did not maintain stable housing. On the other hand, the court also found that during periods of time when respondent mother was living with relatives, she was able to make sure that K.D.'s basic needs were met and took him to all his medical appointments. The court found, however, that even though the child's basic needs were at times being met, respondent mother was not able to meet her own basic needs.

The court also found that respondent mother "does not recognize the inappropriateness of her relationship with her boyfriend that involves physical violence." A DSS worker described a meeting with respondent mother in which they discussed the possibility of respondent mother attending a support group for women who are victims of domestic violence. Respondent mother asked what domestic violence was, and when it was explained to her, she responded, "What's wrong with that?" Although the social worker attempted to explain the effects of domestic violence on young children, respondent mother repeated that she did not feel there was anything wrong with it.

At the end of August 2004, respondent mother agreed to place K.D. with an aunt. K.D.'s daycare reported that following his placement with the aunt, K.D. became "a completely different child" and began talking, eating better, and working towards potty training. K.D. has remained with the aunt.

In November 2004, DSS filed a petition alleging that K.D. was a neglected and dependent child. The case was heard on 5 January 2005, at which time respondent mother was about three months pregnant with a second child. After hearing all the evidence, the trial court found that K.D. was neglected and dependent. K.D.'s dispositional hearing was held on the same date, and at its conclusion, the court gave custody of K.D. to the aunt and relieved DSS of further efforts towards reunification with respondent mother. The adjudication and dispositional orders were entered on 1 March 2005. Respondent mother filed a timely notice of appeal.

**IN RE K.D.**

[178 N.C. App. 322 (2006)]

Psychologist-Patient Privilege

**[1]** Respondent mother contends that the trial court violated her psychologist-patient privilege by considering evidence—in the form of a letter and testimony—from Cynthia Koempel of JCMHC. The patient has the burden of establishing the existence of a privilege and of objecting to the disclosure of such privileged information. *Adams v. Lovette*, 105 N.C. App. 23, 28, 411 S.E.2d 620, 624, *aff'd per curiam*, 332 N.C. 659, 422 S.E.2d 575 (1992).

Respondent mother has not preserved this question for appellate review. Under N.C.R. App. P. 10(b)(1), "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." Although respondent mother objected to various statements that Koempel made during the hearing and to admission of the letter from Koempel to respondent mother's social worker, she did not object on the basis of privilege. Instead, her objections were based on hearsay and expert qualifications. A party may not assert at trial one basis for objection to the admission of evidence, but then rely upon a different basis on appeal. *See State v. Benson*, 323 N.C. 318, 322, 372 S.E.2d 517, 519 (1988) ("[Appellant] may not swap horses after trial in order to obtain a thoroughbred upon appeal.").

Even apart from the Rules of Appellate Procedure, it is well-established that a failure to object to requested disclosure of privileged information constitutes a waiver of that privilege. *Adams*, 105 N.C. App. at 28, 411 S.E.2d at 624. In *Adams*, this Court held that "the defendant impliedly waived his alleged [physician-patient] privilege because he objected to the request, not on the grounds of privilege, but on the grounds of relevance." *Id.* at 29, 411 S.E.2d at 624. Accordingly, here, respondent mother's failure to object to Koempel's testimony on the basis of privilege amounted to a waiver of her right to claim the psychologist-client privilege on appeal.

Finally, our General Assembly has stated repeatedly that the psychologist-patient privilege does not operate to exclude evidence regarding the abuse or neglect of a child. N.C. Gen. Stat. § 7B-310 (2005) ("No privilege, except the attorney-client privilege, shall be grounds for excluding evidence of abuse, neglect, or dependency in any judicial proceeding (civil, criminal, or juvenile) in which a juvenile's abuse, neglect, or dependency is in issue . . . ."); N.C. Gen. Stat.

§ 8-53.3 (2005) ("Notwithstanding the provisions of this section, the psychologist-client or patient privilege shall not be grounds for excluding evidence regarding the abuse or neglect of a child . . . ."). *See also State v. Knight,* 93 N.C. App. 460, 466-67, 378 S.E.2d 424, 427 (under § 8-53.3, defendant's statement to psychologist that he had been seduced by underage stepdaughter was not privileged because it related to abuse or neglect of child), *disc. review denied,* 325 N.C. 230, 381 S.E.2d 789 (1989).

Further, N.C. Gen. Stat. § 8-53.3 permits the trial judge to compel disclosure of otherwise privileged information "if in his or her opinion disclosure is necessary to a proper administration of justice." No explicit finding is required since such a finding is implicit in the admission of the evidence. *State v. Williams,* 350 N.C. 1, 21, 510 S.E.2d 626, 640, *cert. denied,* 528 U.S. 880, 145 L. Ed. 2d 162, 120 S. Ct. 193 (1999). This assignment of error is, therefore, overruled.

## Neglect

**[2]** Respondent mother next argues that the trial court erred by adjudicating K.D. a neglected child. In a non-jury adjudication of abuse, neglect, and dependency, "the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." *In re Helms,* 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997). This Court reviews the trial court's conclusions of law to determine whether they are supported by the findings of fact. *Id.*

Respondent mother specifically assigns error only to the adjudication order's first and second findings of fact. Her brief, however, contains no arguments challenging the first finding of fact. We, therefore, deem that assignment of error abandoned. N.C.R. App. P. 28(a) ("Questions raised by assignments of error in appeals from trial tribunals but not then presented and discussed in a party's brief, are deemed abandoned."). As to the second finding of fact, the only argument in respondent mother's brief that addresses this finding pertains to the admissibility of evidence from Koempel—an argument we have already rejected.

As for the remaining findings of fact in the adjudication order, respondent mother employs a single assignment of error to challenge all of them generally. It is well-established that "[a] single assignment generally challenging the sufficiency of the evidence to support numerous findings of fact . . . is broadside and ineffective." *Wade v. Wade,* 72 N.C. App. 372, 375-76, 325 S.E.2d 260, 266, *disc. review*

**IN RE K.D.**

[178 N.C. App. 322 (2006)]

*denied,* 313 N.C. 612, 330 S.E.2d 616 (1985). Respondent mother's broadside assignment of error is, therefore, inadequate to preserve for review the sufficiency of the evidence to support the findings of fact. Accordingly, our review as to whether K.D. was correctly adjudicated to be neglected is limited to determining whether the trial court's findings of fact support its conclusions of law.

The Juvenile Code defines a neglected juvenile as:

A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.

N.C. Gen. Stat. § 7B-101(15). With respect to adjudications of neglect, this Court has explained that "the decision of the trial court must of necessity be predictive in nature, as the trial court must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case." *In re McLean,* 135 N.C. App. 387, 396, 521 S.E.2d 121, 127 (1999).

In this case, the trial court found that respondent mother had a history of leaving K.D. without ensuring he was properly supervised, without advising her family that she was leaving, and without making arrangements for his care. The court further found that (1) despite a history of mental illness, which resulted in hospitalization, respondent mother failed to follow through with needed mental health services; (2) respondent mother, who is mentally retarded, failed to attend parenting classes; (3) respondent mother had not attended domestic violence or anger management classes as suggested by DSS; and (4) respondent mother does not recognize the inappropriateness of physical violence in her relationships. Based on these specific findings, the court entered an ultimate finding that K.D. was neglected because he "is at substantial risk of harm of physical and emotional care as the mother has failed to address the protective issues identified during her involvement with the JCDSS including, but not limited to h[is] mother's mental health issues, domestic violence issues, anger management issues and parenting issues and lack of stable housing."

Respondent mother argues on appeal that these aspects of her life, cited by the trial court as reasons why her son was neglected, all

pertain to her own functioning and not to the care provided to the child. We disagree. Respondent mother's struggles with parenting skills, domestic violence, and anger management, as well as her unstable housing situation, have the potential to significantly impact her ability to provide "proper care, supervision, or discipline" for K.D. *See In re M.J.G.*, 168 N.C. App. 638, 647, 608 S.E.2d 813, 818 (2005) (trial court properly adjudicated juvenile neglected based in part on mother's history of domestic violence, unstable housing, and failure to utilize services offered to her by DSS). We therefore conclude that the trial court properly adjudicated K.D. to be a neglected juvenile.

### Dependency

**[3]** Respondent mother also argues that the trial court erred in adjudicating K.D. a·dependent child. A dependent juvenile is one who is:

in need of assistance or placement because this juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or whose parent, guardian, or custodian is unable to provide for the care or supervision *and lacks an appropriate alternative child care arrangement.*

N.C. Gen. Stat. § 7B-101(9) (emphasis added). Here, the trial court found that K.D. was dependent because "the mother is not able to provide proper care and supervision for the juvenile." On appeal, respondent mother contends that she does not lack an appropriate alternative child care arrangement since she voluntarily placed K.D. with her aunt.

This Court has previously held that a trial court failed to make sufficient findings to support an adjudication of dependency when a relative had agreed to take custody of the child in order to prevent him from going into foster care. *In re P.M.*, 169 N.C. App. 423, 427-28, 610 S.E.2d 403, 406 (2005). In *P.M.*, the Court noted that, although the trial court entered findings that the mother was unable to provide for the child's care and supervision, the trial court "never addressed the second prong of the dependency definition. The trial court made no finding that respondent lacked 'an appropriate alternative child care arrangement.' " *Id.* at 428, 610 S.E.2d at 407. We are faced with the same situation here: the trial court's language in the adjudication order tracks the first prong of the definition of dependency, but ignores the second. We, therefore, reverse as to K.D.'s dependency, and remand to the trial court for further findings as to whether K.D. lacks "an appropriate alternative child care arrangement."

Affirmed in part, reversed in part, and remanded.

Judges McGEE and CALABRIA concur.