TYSON, Judge.
Petitioner ("Father") appeals from the trial court's order entered 16 March 2017, which determined Father to be a responsible individual and ordered his name be placed on the responsible individuals list pursuant to N.C. Gen. Stat. § 7B-323. We affirm.
I. Background
In a letter dated 8 August 2016, the Mecklenburg County Department of Social Services ("DSS") notified Father that it had conducted an investigative assessment of claims of sexual abuse by Father against his minor son, J.E. ("Justin"). The letter stated, in pertinent part:
The agency received a report alleging you subjected your child [Justin], to sexual abuse in that you penetrated his anus using your finger. This agency finds there is sufficient evidence to substantiate the claims against you. ... As a result, a case decision to substantiate Sexual Abuse has been made. This substantiation also identifies you as a person responsible for the Abuse and Serious Neglect and with that comes the potential for your name to be placed on the Responsible Individuals List (RIL).
On 16 August 2016, Father filed a petition for judicial review, pursuant to N.C. Gen. Stat. § 7B-323, to challenge DSS' determination that he abused or seriously neglected Justin and prevent his name being added to the responsible individuals list. The trial court conducted a hearing on 14 February 2017, and entered a written order upholding DSS' decision on 16 March 2017. The trial court's order contains the following findings of fact:
2. Pursuant to NCGS § 7B-320, [Father], received personal written notice of the results of the investigative assessment and the Director of Mecklenburg County Department of Social Services, Division of Youth and Family Services' determination that he abused or seriously neglected [Justin] on 8 August 2016 and that his name would be added to the Responsible Individuals List.
3. Pursuant to NCGS § 7B-324, [Father] had not been criminally convicted as a result of the incident and filed a petition for judicial review with this Court within 15 days after receiving the Director's notice on 15 August 2016.
4. That Jennifer Frashuer, a register[ed] nurse and a forensic interviewer with the Butterfly House Child Advocacy Center interviewed [Justin].
5. That Ms. Frashuer shared her results with Regina Smith, the medical examiner for Butterfly House.
6. [Justin] was referred to the Butterfly House by his therapist, Veleka Barbee of Journey Counseling Service.
...
8. Veleka Barbee, [Justin's] therapist became concerned about specific behaviors that [Justin] displayed. More specifically, [Justin] actively seeking out dolls in order to remove their clothes and doing so. [Justin] arranged two nude male dolls in a spooning position, and placed a toy camera on a tripod next to the two male dolls.
9. Whereas initially [Justin's] behavior in and of itself was not concerning to Ms. Barbee, they were noteworthy to the therapist.
10. Within time there was build-up of things noticed by the therapist and the mother that resulted in a more extensive evaluation.
11. In session with Ms. Barbee, the mother shared that [Justin] had brought up secrets and secrets that he could not tell.
12. That [Justin] sleeps in the bed with his father and showers with his father, despite other bedrooms being available in the house. He sleeps in his own room at his mother's house.
13. Initially [Father] was very opposed to therapy.
....
15. There was an incident in the bathtub where [Justin] told his mother "if you say that, I will let you touch me there."
16. That there was an incident in which [Justin] stuck his hand in his maternal grandmother's butt crack, (sic) said "I was touching your butthole (sic)."
...
18. On or about 5 December 2015, [Justin] called his mother to the bathroom due to blood in his stool.
19. The mother asked [Justin] "if his bottom hurt?", to which [Justin] responded, "no and my daddy didn't do it!"
20. The mother questioned [Justin] about what he meant and [Justin] repeated "my daddy didn't do it; he just has accidents sometimes."
21. Upon further inquiry [Justin] explained to his mother and her husband ... sometimes his dad accidentally touches his bottom when they sleep together at night.
22. [Justin] followed with a demonstration laying his mother on her side and putting his hand on her bottom near her butt crack (sic).
23. [Justin] relayed to his mother that it "does not happen every time, just sometimes."
24. [Justin] said that his father did it at Disney and at his father's house.
25. [Justin] stated in a child medical interview that "sometimes his father put his hands inside his butt and it felt bad."
26. [Justin] made repeated references throughout his medical interview about wanting to tell secrets including the statement, "I want to tell you a secret."
27. Mr. and Mrs. [ ], mother and step-father, also note that [Justin] regresses when he returns from his father's house and acts babyish.
28. [Justin] told his mother and his therapist that "sometimes my father has accidents," and "sometimes he touches my bottom by accident."
29. The mother reported that whenever she told [Justin] that no one is ever to touch his private area, [Justin] responded that "his father is not private and gets very defensive about this."
30. The mother told [Justin] that "he was going to the Butterfly House to talk about the accidents." [Justin] asked "is my dad going to jail?"
31. The records from [Justin's] medical examination of 9 December 2015 indicate that [Justin] sometimes has bad dreams about scary things.
32. [Justin's] mother notes that [Justin] has been clingier to dad and asking his dad to hold him over the past several months which is not normal behavior for [Justin].
33. At the time of the 9 December medical examination, [Justin] slept in his own room at his mother's home, but slept with his father in his father's bed when visiting with his father.
34. The Director of the Mecklenburg County Department of Social Services, Division of Youth and Family Services has established by a preponderance of the evidence abuse and the identification of the responsible individual.
Based upon these findings of fact, the trial court concluded, as a matter of law, Father is a responsible individual pursuant to N.C. Gen. Stat. § 7B-323 and ordered DSS to place Father's name on the responsible individuals list.
During the hearing on Father's petition for judicial review, the trial court admitted into evidence Justin's medical and mental health records obtained from Butterfly House Children's Advocacy Center over Father's objection. Father objected on the grounds the records did not fall under the business records exception to hearsay.
Father filed a Rule 59 motion for a new trial on 27 March 2017, in response to the trial court's 16 March 2017 order. Father's motion for a new trial was dismissed by the trial court on 30 May 2017 due to non-appearance by the parties at the hearing scheduled on the motion. On 29 June 2017, Father filed timely notice of appeal of the trial court's 16 March 2017 order. See N.C. R. App. P. 3(c)(3).
II. Jurisdiction
Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. §§ 7B-323(f) (2017) and 7A-27(b)(2) (2017).
III. Issues
Father argues: (1) the trial court erred in admitting DSS' Butterfly House child advocacy center records into evidence under the business records exception to the hearsay rule; and, (2) the trial court's conclusion Father is a person responsible for the serious abuse or neglect of a minor is not supported by the evidence.
IV. Standard of Review
"This Court reviews a trial court's ruling on the admission of evidence over a party's hearsay objection de novo ." State v. Hicks , 243 N.C. App. 628, 638, 777 S.E.2d 341, 348 (2015) (citation omitted).
From a bench trial, this Court reviews a trial court's order to determine "whether there is competent evidence to support the trial court's findings of fact." Sessler v. Marsh , 144 N.C App. 623, 628, 551 S.E.2d 160, 163 (2001) (citation omitted). "Findings of fact are binding on appeal if there is competent evidence to support them." Id. This Court reviews a trial court's conclusions of law de novo . Lagies v. Myers , 142 N.C. App. 239, 247, 542 S.E.2d 336, 341, disc. review denied , 353 N.C. 526, 549 S.E.2d 218 (2001). In reviewing de novo a trial court's conclusions of law, we determine whether they are supported by the findings of fact. Id.
V. Analysis
A. Responsible Individuals List
A responsible individual is "A parent, guardian, custodian, or caretaker who abuses or seriously neglects a juvenile." N.C. Gen. Stat. § 7B-101(18a) (2017). Abuse includes "taking indecent liberties with the juvenile." N.C. Gen. Stat. § 7B-101(1) d. See United States v. Mills , 850 F.3d 693, 698 (4th Cir. 2017) (an "[i]ndecent liberty includes ... touching"); State v. Laney , 178 N.C. App. 337, 341, 631 S.E.2d 522, 524 (2006) (there are "a number of acts" within the definition of indecent liberties, including touching a child's body either over or under clothing).
DSS maintains a confidential list of responsible individuals. N.C. Gen. Stat. § 7B-311(b) (2017). Information from this list may be provided to "child caring institutions, child placing agencies, group home facilities, and other providers of foster care, child care, or adoption services that need to determine the fitness of individuals to care for or adopt children." Id .
An individual named to the responsible individuals list has a right to seek judicial review of the determination. N.C. Gen. Stat. § 7B-323(a) (2017). The Department of Social Services has the burden of establishing by a preponderance of the evidence of (1) abuse or serious neglect and (2) the individual seeking review is responsible for the abuse or serious neglect. N.C. Gen. Stat. § 7B-323(d). "If, after the hearing, the court concludes that the director has not met his burden of establishing either the abuse or serious neglect, or that the individual was the responsible individual, the court shall reverse the director and expunge the individual's name from the responsible individuals list." N.C. Gen. Stat. § 7B-323(e).
B. Preservation
Father argues the trial court improperly admitted the Butterfly House records into evidence under the business records exception because: (1) he was not provided the advance notice required by N.C. Gen. Stat. § 8C-1, Rule 803(6) for authenticating business records by affidavit; (2) the source of information or method of preparation of the records indicate a lack of trustworthiness; and (3) the records contain hearsay within hearsay.
The rules of evidence governing civil cases apply to judicial review of a department of social services' decision to place a person on the responsible individuals list. N.C. Gen. Stat. § 7B-323(b).
Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2017). Hearsay is inadmissible except as provided by statute or an exception in the rules of evidence. N.C. Gen. Stat. § 8C-1, Rule 802. The qualified admission of business records is an exception to the general inadmissibility of hearsay. See N.C. Gen. Stat. § 8C-1, Rule 803(6) (2017).
At the hearing, records from Butterfly House were admitted under Rule 803(6), which states:
(6) Records of Regularly Conducted Activity.-A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if (i) kept in the course of a regularly conducted business activity and (ii) it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit or by document under seal under Rule 902 of the Rules of Evidence made by the custodian or witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. Authentication of evidence by affidavit shall be confined to the records of nonparties, and the proponent of that evidence shall give advance notice to all other parties of intent to offer the evidence with authentication by affidavit. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
N.C. Gen. Stat. § 8C-1, Rule 803(6) (emphasis supplied).
At the judicial review hearing, DSS submitted the records along with the affidavit of the Butterfly House records custodian. Father made three objections to the admission of the records. Father's counsel first objected to the records admission on the stated grounds the records custodian's affidavit did not appear to include a statement the records were "made at or near the time that it was prepared by a person with knowledge." Counsel for DSS referred Father's counsel to the fifth paragraph of the records custodian's affidavit, which states "the attached records were prepared by the personnel of CHS Stanly ... at or near the time of the act, event, condition, opinion or diagnosis, reported there and by a person or persons with knowledge ...." Upon being directed to this language, Father's counsel stated:
[Father's counsel]: Can I just look over here and make sure? Your Honor, I do think that's accurate.
THE COURT: Yes.
[Father's counsel]: So thank you so much.
THE COURT: Sure.
[Father's counsel]: I apologize. I read quickly.
Father next made an objection the admission of the records under the business records exception, in the following exchange:
THE COURT: So assuming that the affidavit of the records custodian is sufficient, because I didn't hear any other objection, is there objection to some portion of the records for a specific reason?
[Father's counsel]: There is, Your Honor. And Your Honor, just for the record, I would note an objection for the records coming in , or I would ask for a limiting instruction on that, and here's why.
THE COURT: All right.
[Father's counsel]: The record can come in, but the question then becomes for what purpose? Does it come in substantively? Does it come in just for the record? Does it come in for the truth of the matter? What does it come in for?
THE COURT: I would assume, Mr. Smith, that, based on the business records exception for records of regularly-conducted activity, you are seeking to introduce the records for the truth of the matter asserted; is that correct, sir?
[DSS' counsel]: Yes, Your Honor.
[Father's counsel]: If Your Honor please-
THE COURT: Pursuant to the hearsay exception, that is the proposal of the Department. Did you wish to put anything else on the record, as to the records themselves?
[Father's counsel]: Yes, Your Honor, I do.
THE COURT: All right.
[Father's counsel]: And just respectfully note my objection for that.
THE COURT: Sure. (Emphasis supplied.)
Father's trial counsel next voiced his concerns about the admission of the records because of a form contained therein entitled "Medical Consent." Father's trial counsel initially thought Justin's mother did not sign the form to consent to treatment of Justin. After the trial court and attorneys reviewed the document, Father's trial counsel conceded "Your Honor, this page is fine. The medical consent."
The trial court then asked Father to state his objection again for the record. Father then objected to a form in the records entitled "Consent for Photographs and/or Video Tapes Made for Medical Documentation." On the form, Justin's mother had signed, on Justin's behalf, her name to "consent to the taking of photographs and/or video tapes for use in connection with any information documented in my medical records." Father's trial counsel argued, "So I would assume that, maybe, it would be proper if you were giving consent to that, you would sign the child's name by the parent." The trial court overruled Father's objection.
Father now argues for the first time on appeal the trial court should not have admitted the records because his trial counsel was not given advance notice of DSS' intent to authenticate the records by affidavit and the records contain untrustworthy information, including hearsay within hearsay. Father's trial counsel never raised the lack of advance notice nor made any objection to the admission of the records based upon a lack of notice. Father's trial counsel also never specifically argued, or asserted as the basis for an objection, the records should not have been admitted because they contain untrustworthy information.
Our appellate rules provide: "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). Consistent with the basic intent of Rule 10, this Court has held "A party may not assert at trial one basis for objection to the admission of evidence, but then rely upon a different basis on appeal." In re K.D. , 178 N.C. App. 322, 326, 631 S.E.2d 150, 153 (2006) ; see also State v. Davis, 207 N.C. App. 359, 363, 700 S.E.2d 85, 88 (2010) ("where a theory argued on a[n] appeal was not raised before the trial court[,] the argument is deemed waived on appeal." (citation omitted) ).
Father does not assert on appeal the two specific grounds his counsel objected to the records at the hearing. Father's new arguments on appeal regarding lack of advance notice, trustworthiness of the records, and hearsay within hearsay were not preserved by Father's objections at the hearing. Father's arguments concerning advanced notice, trustworthiness, and hearsay within hearsay are waived and dismissed. See In re K.D. , 178 N.C. App. at 326, 631 S.E.2d at 153.
C. Findings of Fact
Father also argues that because the Butterfly House records were purportedly inadmissible, then the trial court's findings of fact are unsupported by competent evidence. Because Father has failed to argue and has not preserved any of his arguments against the trial court's admission of the records under the business records exception of Rule 803(6), his argument fails.
Father specifically challenges findings of fact numbers 11 through 16, 19 through 26, and 28 through 33. Father's sole argument to challenge these findings is that they were completely based on the contents of the Butterfly House exhibit he contends the trial court should not have admitted. As discussed above, Father has not preserved any argument against the admission of the records raised at the hearing, and the trial court did not err in admitting the Butterfly House exhibit over Father's objections on the grounds stated. Each of the findings of fact in the trial court's order was supported by competent evidence in the form of statements given by Justin and his mother to Justin's therapist and Butterfly House personnel, which are contained within the records. Father's argument is overruled.
D. Trial Court's Conclusion Father is a Responsible Individual
Father additionally argues DSS failed to meet its burden and presented no admissible substantive evidence of abuse. Father's argument is again premised on the Butterfly House exhibit being inadmissible.
As stated above, the Butterfly House exhibit was properly admitted. At the judicial review hearing, Father specifically denied placing his hand "at or near the child's anus or genital area." This testimony, standing alone, is not enough to sufficiently rebut the finding that Father is an individual responsible for the abuse of a juvenile. The trial court determined Father is a responsible individual based upon its findings of fact, which are supported by the competent evidence of the Butterfly House records and testimony. The trial court weighed the evidence and found Father's testimony not to be credible.
Since it was determined Father is a responsible individual, the trial court was required to order Father's name be placed on the responsible individual's list. N.C. Gen. Stat. § 7B-311(b)(2) ("[t]he name of an individual who has been identified as a responsible individual shall be placed on the responsible individuals list ... after ... [t]he court determines that the individual is a responsible individual as a result of a hearing on the individual's petition for judicial review.") (emphasis supplied). The trial court did not err by placing Father's name on the responsible individuals list. Father's argument is overruled.
VI. Conclusion
Father has waived the arguments he asserts for the first time on appeal against the admission of the Butterfly House records. Consequently, the trial court did not err by admitting the Butterfly House records and the statements by Justin and Justin's mother contained therein. The trial court's findings of fact were supported by competent evidence in the record and supported the trial court's conclusion of law that Father is a responsible individual.
The trial court properly ordered Father's name to be placed on the responsible individuals list. The order of the trial court is affirmed. It is so ordered.
AFFIRMED.
Report per Rule 30(e).
Judges DIETZ and BERGER concur.