IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-792

Filed 16 April 2025

Sampson County, No. 21JA000087-810

IN THE MATTER OF:

K.E.P., A Juvenile.

Appeal by respondent-mother from orders entered 10 April 2024 and 3 May 2024 by Judge Shelly S. Holt in Sampson County District Court. Heard in the Court of Appeals 18 March 2025.

*Mary McCullers Reece and The Law Office of W. Joel Starling, Jr. PLLC, by W. Joel Starling, Jr., for petitioner-appellee Sampson County Department of Social Services.*

*NC Guardian Ad Litem Program, by Michelle FormyDuval Lynch, for appellee guardian ad litem.*

*BJK Legal, by Benjamin J. Kull, for respondent-appellant mother.*

ZACHARY, Judge.

Respondent-Mother appeals from the trial court's orders adjudicating her minor child "Karina"[1] to be an abused and neglected juvenile and placing Karina in the sole legal and physical custody of Respondent-Father. After careful review, we affirm.

---

[1] For ease of reading and to protect the identity of the minor child, we use the pseudonym to which the parties stipulated. *See* N.C.R. App. P. 42(b).

## I.    Background

Karina was born to Respondents in April 2018, when they were living in Cumberland County. Within months of Karina's birth, Respondents' relationship drastically deteriorated, with each parent making allegations of domestic violence against the other. Respondent-Mother filed an action seeking custody of Karina in 2018. In 2019, a child custody order was entered in Cumberland County District Court awarding Respondent-Mother custody of Karina and granting Respondent-Father visitation.

From 2018 to 2021, the Cumberland County Department of Social Services ("CCDSS") received five child welfare reports concerning Respondent-Father's alleged maltreatment of Karina. The first report was not investigated, and CCDSS determined that the allegations of the next four reports were unsubstantiated. Nevertheless, after receiving the fifth report, CCDSS sought to have a child medical examination conducted on Karina. Dr. Danielle Thomas-Taylor initially objected to performing the examination, as Karina had already been evaluated for sexual allegations twice before and Dr. Thomas-Taylor believed that further physical examination could be traumatic for Karina.

By 2021, Karina and Respondent-Mother were living in Sampson County with Karina's maternal grandmother and step-grandfather. On 23 March 2021, the Sampson County Department of Social Services ("SCDSS") received its first child welfare report that Respondent-Father had sexually abused Karina. Dr. Thomas-

Taylor agreed to conduct a child medical examination in the hopes that this would "potentially . . . stop having [Karina] evaluated so many times and give the family an answer and recommendations for moving forward for the safety and well-being of their child." SCDSS determined that the allegations were unsubstantiated; however, in her written report ("the CME"), Dr. Thomas-Taylor expressed "concerns for the frequency with which [Karina] has presented to the emergency department with request for thorough evaluation for concerns of sexual abuse."

In July 2021, SCDSS received two more child welfare reports alleging Respondent-Father's maltreatment of Karina. Further involvement by SCDSS in Karina's case led a child protective services worker to develop "concerns for control and manipulation" of Respondent-Mother. SCDSS determined that Dr. Maria O'Tuel should perform a child and family forensic evaluation ("the CFE") "to help determine the presence or absence of abuse, to determine the extent of abuse or neglect if found," and to provide a basis for informed treatment recommendations.

As part of the CFE, Dr. O'Tuel conducted interviews and reviewed Karina's medical records and reports drafted by child protective services workers from both counties, including the CME. Dr. O'Tuel concluded, *inter alia*, "that it was highly improbable that [Karina] had been sexually abused as alleged" and instead "concluded that it was highly likely that [Karina] had sustained some emotional abuse" by Respondent-Mother and her family. Consistent with Dr. O'Tuel's recommendations, SCDSS attempted to implement a safety plan allowing Karina to

reside with Respondent-Father, but Respondent-Mother refused to agree to its terms.

On 8 September 2021, SCDSS filed a juvenile petition alleging that Karina was an abused and neglected juvenile. SCDSS obtained nonsecure custody of Karina that same day and placed her with Respondent-Father.

This matter came on for hearing on 26 February 2024 in Sampson County District Court. Child protective services workers from CCDSS and SCDSS testified, as did Dr. Thomas-Taylor and Dr. O'Tuel. The CME and the five child welfare reports alleging Respondent-Father's maltreatment of Karina that were received by CCDSS were admitted into evidence; however, the CFE and various hospital and medical records upon which the CME was partially based were not.

On 10 April 2024, the trial court entered an order in which it adjudicated Karina to be an abused and neglected juvenile. On 3 May 2024, the court entered its disposition order, determining that it was in Karina's best interests for Respondent-Father to be granted sole legal and physical custody of Karina and for Respondent-Mother to be granted visitation. That same day, the court entered a Chapter 7B-911 custody order to that effect. *See* N.C. Gen. Stat. § 7B-911 (2023).

Respondent-Mother timely filed notice of appeal.

## II. Discussion

On appeal, Respondent-Mother challenges the evidentiary support for several of the trial court's adjudicatory findings of fact and further contends that the adjudicatory findings lack necessary clarity. Finally, she argues that the adjudication

- 4 -

order "must be reversed because even as written, the adjudicatory findings lack one necessary factual determination: that the reports of Karina's suspected sexual abuse were somehow made in bad faith." We disagree.

## A. Standard of Review

In an appeal from an initial adjudication in a juvenile proceeding, "the sole question for the reviewing court is whether the trial court's conclusions of law are supported by adequate findings and whether those findings, in turn, are supported by clear, cogent, and convincing evidence." *In re A.J.*, 386 N.C. 409, 411–12, 904 S.E.2d 707, 711 (2024) (cleaned up). "When assessing whether a particular finding is supported by clear, cogent, and convincing evidence, the reviewing court must consider any properly preserved challenges to the admission of the supporting evidence." *Id.* at 412, 904 S.E.2d at 711.

It is well established that "the North Carolina Rules of Evidence apply at the adjudication stage of these juvenile proceedings. Thus, statements that constitute inadmissible hearsay are not clear, cogent, and convincing evidence on which the trial court may rely." *Id.* (citation omitted). "Assuming an evidentiary objection is properly preserved, a party may argue on appeal that any findings supported solely by inadmissible evidence are infirm and cannot support the trial court's conclusions of law." *Id.*

Moreover, "[i]n a non-jury [juvenile] adjudication, the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive,

even where some evidence supports contrary findings. If competent evidence supports the findings, they are binding on appeal." *In re L.Z.A.*, 249 N.C. App. 628, 632, 792 S.E.2d 160, 165 (2016) (cleaned up).

## B. Analysis

On appeal, Respondent-Mother raises a series of arguments concerning the sufficiency of the trial court's findings of fact in the adjudication order, which she contends must be reversed. She further asserts that if her arguments succeed, then "the disposition order—as well as the private custody order resulting from it—must also be reversed." However, she offers no independent arguments concerning those orders; her appeal rests entirely on the sufficiency of the adjudication order.

The trial court adjudicated Karina to be an abused juvenile pursuant to N.C. Gen. Stat. § 7B-101(1)(e) and a neglected juvenile pursuant to § 7B-101(15)(a) and (e). A juvenile may be adjudicated as abused if the juvenile's parent, guardian, custodian, or caretaker "[c]reates or allows to be created serious emotional damage to the juvenile; serious emotional damage is evidenced by a juvenile's severe anxiety, depression, withdrawal, or aggressive behavior toward himself or others." N.C. Gen. Stat. § 7B-101(1)(e). A juvenile may be adjudicated as neglected if the juvenile's parent, guardian, custodian, or caretaker "[d]oes not provide proper care, supervision, or discipline" or "[c]reates or allows to be created a living environment that is injurious to the juvenile's welfare." *Id.* § 7B-101(15)(a), (e).

### 1. *Evidentiary Support for Adjudicatory Findings*

We first address Respondent-Mother's argument that many of the trial court's adjudicatory findings of fact were "based on evidence that was not offered to prove the truth of the matter(s) contained therein" and therefore "cannot be considered" in our appellate review of whether the court's findings support the conclusions of law. In particular, Respondent-Mother focuses on findings of fact that she alleges were based on evidence received at the hearing (1) "for explaining the background of SCDSS's investigation," and (2) "for explaining the factual bases of the two experts' opinions."

As an initial matter, the guardian ad litem contends that many of Respondent-Mother's arguments concerning the findings of fact "are broadside challenges stating the finding relied on evidence that was either not admitted into evidence or does not contain the information in the finding with no reference to objections, acknowledgment of testimonial evidence supporting the finding, and little to no citation to legal authority." It is well established that a single general challenge to "the sufficiency of the evidence to support numerous findings of fact is broadside and ineffective." *In re K.D.*, 178 N.C. App. 322, 327, 631 S.E.2d 150, 154 (2006) (cleaned up). We agree that Respondent-Mother wages broadside attacks against many of the findings of fact that she challenges, including findings #11–20, 22–24, 38–39, and 52. However, even assuming, *arguendo*, that the general thrust of Respondent-Mother's arguments provides sufficient support for review of these challenges, they still lack merit.

a. *Child Welfare Reports*

The first two groups of findings that Respondent-Mother challenges are those based on the five child welfare reports concerning Karina that CCDSS received, all of which were admitted into evidence pursuant to the business records exception to the hearsay rule. Because Respondent-Mother's argument regarding these reports is based on a misunderstanding of this exception to the hearsay rule, we begin with a brief overview of that rule.

"Hearsay" is defined by our Rules of Evidence as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c). "Hearsay is not admissible except as provided by statute or by" the Rules of Evidence. *Id.* § 8C-1, Rule 802. One such exception is the business records exception, "which provides that business records of regularly conducted activity are not excluded by the hearsay rule, even though the declarant is unavailable as a witness." *In re S.D.J.*, 192 N.C. App. 478, 482, 665 S.E.2d 818, 821 (2008); N.C. Gen. Stat. § 8C-1, Rule 803(6).

Rule 803(6) provides that the following types of evidence, if properly authenticated, are not excluded by the hearsay rule:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if (i) kept in the course of a regularly conducted business activity and (ii) it was the regular practice of that business activity to make the memorandum, report, record, or data compilation . . . .

N.C. Gen. Stat. § 8C-1, Rule 803(6).

The records of a juvenile case, kept by a department of social services, upon which a child protective services worker relies in her testimony, may qualify as a business record under this exception. *In re C.R.B.*, 245 N.C. App. 65, 69–70, 781 S.E.2d 846, 850–51, *disc. review denied*, 368 N.C. 916, 787 S.E.2d 23 (2016). As this Court has recognized, "even though a witness's knowledge was limited to the contents of . . . [a parent]'s file with which [s]he had familiarized h[er]self, [s]he could properly testify about the records and their significance so long as the records themselves were admissible under the business records exception to the hearsay rule." *Id.* at 69, 781 S.E.2d at 850 (cleaned up).

Qualifying business records are admissible under Rule 803(6) "when a proper foundation is laid by testimony of a witness who is familiar with the records and the methods under which they were made so as to satisfy the court that the methods, the sources of information, and the time of preparation render such evidence trustworthy." *Id.* at 70, 781 S.E.2d at 850 (cleaned up). "While the foundation must be laid by a person familiar with the records and the system under which they are made, there is no requirement that the records be authenticated by the person who made them." *Id.* at 70, 781 S.E.2d at 850–51 (cleaned up).

At the hearing below, SCDSS consistently maintained that it was offering the child welfare reports into evidence pursuant to the business records exception to the hearsay rule, and our careful review of the transcript clearly shows that the trial

court admitted all five reports under this exception. Indeed, Respondent-Mother's counsel acknowledged as much when she objected to the records' admission—arguing that the records were, in fact, being offered as substantive evidence—and when she subsequently renewed her objection to the court's ruling on the grounds of "authentication, hearsay, and no business record exception."

On appeal, Respondent-Mother does not argue that these child welfare reports were improperly admitted pursuant to the business records exception. Respondent-Mother does not challenge the reports' admission into evidence, nor does she raise any of her arguments that were more vigorously asserted below regarding the reports' authentication and any alleged hearsay therein. Instead, she argues that the findings of fact based on the child welfare reports should be treated as "non-substantive evidentiary findings." *In re A.J.L.H.*, 384 N.C. 45, 52, 884 S.E.2d 687, 692, *reh'g denied*, 384 N.C. 670, ___ S.E.2d ___ (2023). This argument fails for several reasons.

In support of her argument, Respondent-Mother relies upon *A.J.L.H.* and *In re Mashburn*, 162 N.C. App. 386, 591 S.E.2d 584, *appeal dismissed*, 359 N.C. 68, 603 S.E.2d 884 (2004). However, the portions of these cases relevant to Respondent-Mother's argument concern *admissible nonhearsay*, rather than *hearsay properly admitted* pursuant to the business records exception, as was the case here. *See A.J.L.H.*, 384 N.C. at 52, 884 S.E.2d at 692; *Mashburn*, 162 N.C. App. at 392–93, 591 S.E.2d at 589.

Respondent-Mother's citation to *A.J.L.H.* is particularly inapposite because, in

a portion of this Court's opinion that was not appealed to our Supreme Court, we upheld the trial court's finding of fact summarizing the details of previous child welfare reports that were admitted into evidence as properly authenticated business records. *In re A.J.L.H.*, 275 N.C. App. 11, 19–20, 853 S.E.2d 459, 466 (2020), *rev'd and remanded on other grounds*, 384 N.C. 45, 884 S.E.2d 687 (2023). Indeed, it is well established that properly authenticated records kept by a department of social services in a juvenile matter may be "admissible under the business records exception to the hearsay rule." *In re Smith*, 56 N.C. App. 142, 148, 287 S.E.2d 440, 444, *cert. denied*, 306 N.C. 385, 294 S.E.2d 212 (1982).

In that Respondent-Mother neither claims that the reports were not properly authenticated, nor raises any concern of double-hearsay within the reports, she has thus abandoned any such arguments on appeal. *See* N.C.R. App. P. 28(b)(6). The argument that she does raise lacks merit, and therefore her challenge to the court's adjudicatory findings #11–15, 29, 38–39, and 61 is overruled.

*b. Bases for Expert Opinions*

Respondent-Mother next challenges a series of adjudicatory findings based upon the testimony of Dr. Thomas-Taylor and Dr. O'Tuel, asserting that "the evidence that forms the factual basis for an expert's opinion is not admissible for the truth of the matter(s) asserted therein." She claims that therefore any of the trial court's findings of fact based on this type of evidence—such as "the experts' testimony regarding the content of the hospital/medical records and the content of interviews

they conducted in the course of forming their opinions, or the [CME]"—"are not findings regarding the truth of the matters asserted therein" and "serve no practical purpose" in our appellate review of the adjudication order.

However, the CME was admitted into evidence. At the hearing, SCDSS not only offered the CME into evidence on the ground that it contained "the information that formed the basis of [Dr. Thomas-Taylor's] conclusions" as an expert witness, but it also noted that the out-of-court statements within the CME were "made for the purposes of a medical evaluation or medical treatment" and were therefore admissible hearsay. *See* N.C. Gen. Stat. § 8C-1, Rule 803(4) (providing that out-of-court "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history" are not excluded by the hearsay rule). The trial court admitted the CME—which Respondent-Mother admits "also discussed" the factual bases for the experts' opinions—with the explanation that "any statements [in the CME] made by other individuals were done as the basis of preparing her, conducting her examination and . . . the foundation of her conclusions." Consequently, the CME was admitted not only as the basis for expert testimony but also as statements made for purposes of medical treatment. *See id.* Again, Respondent-Mother's counsel confirmed this when she subsequently noted her objections for "lack of foundation, hearsay, and various other violations of [Respondent-Mother]'s constitutional state and federal rights."

On appeal, however, Respondent-Mother raises no argument concerning the

CME's admission into evidence, nor does she challenge any potential hearsay statements contained therein. As a result, any such arguments are abandoned. *See* N.C.R. App. P. 28(b)(6). The trial court properly considered the CME when making its findings of fact. In that the CME, with its descriptions of Karina's medical history, supports the challenged portions of findings #16–20, 22–24, 31–32, 35, 37, 48, 50, 52, 55, and 57–59, these challenges are likewise overruled.

c. *Other Challenged Findings*

In addition to the two primary groups of findings that Respondent-Mother challenges, she also challenges several others on a variety of grounds that are similarly unsuccessful. For example, Respondent-Mother challenges finding of fact #6, but that finding is unnecessary to support the trial court's conclusions of law and thus may be disregarded. *See, e.g.*, *In re J.K.*, 253 N.C. App. 57, 60, 799 S.E.2d 439, 441–42 (2017) ("[E]rroneous findings that are unnecessary to support the trial court's conclusions of law may be disregarded as harmless." (citation omitted)).

We further note that challenged findings of fact #38–39, 49, and 61 are supported by the testimony of a SCDSS child protective services worker. To the extent that Respondent-Mother challenges findings #49 and 60 as mere recitations of testimony, we note that these findings appropriately carry "indication[s] that the trial court evaluated the credibility of the relevant witness[es] or resolved any contradictions in [their] testimony." *In re A.E.*, 379 N.C. 177, 185, 864 S.E.2d 487, 495 (2021). Moreover, to the extent that Respondent-Mother asks us to reconsider the

trial court's credibility determinations regarding the various testifying witnesses from the adjudication hearing below, it is not the role of this Court to question such credibility determinations on appeal. *See In re J.A.M.*, 372 N.C. 1, 11, 822 S.E.2d 693, 700 (2019) ("[A]n important aspect of the trial court's role as finder of fact is assessing the demeanor and credibility of witnesses, often in light of inconsistencies or contradictory evidence. It is in part because the trial court is uniquely situated to make this credibility determination that appellate courts may not reweigh the underlying evidence presented at trial.").

Finally, as Respondent-Mother aptly notes, challenged findings #63–64 are actually conclusions of law, which we treat as such on appeal. *See, e.g.*, *In re K.J.M.*, 288 N.C. App. 332, 341–42, 886 S.E.2d 589, 596 (2023).

As indicated herein, our careful review of the record reveals that the unchallenged findings, combined with the challenged findings of fact that are supported by clear, cogent, and convincing evidence, amply support the trial court's conclusions of law. Therefore, Respondent-Mother's evidentiary arguments are overruled.

## 2. *Clarity of Findings*

Respondent-Mother next argues that "the adjudicatory findings lack the clarity needed to determine whether [she] 'allowed' the non-caretaker Maternal Grandparents to take Karina to the hospital for three vaginal exams." This argument is wholly without merit.

Respondent-Mother contends that "the adjudicatory findings fail to specifically identify *who* took Karina to the hospital for those emergency room visits and exams." Instead, she notes that finding of fact #16 "says that it was either [Respondent-]Mother, Maternal Grandmother, 'and/or' Maternal Grandfather who took her." Critically, finding of fact #18 explains that Respondent-Mother "either took [Karina] to these emergency room visits herself *or gave permission* for [Karina] to receive medical treatment during the emergency room visits." (Emphasis added).

This finding of fact satisfies the "allows to be created" elements of the definitions of abused and neglected juveniles. N.C. Gen. Stat § 7B-101(1)(e), (15)(e). As this finding of fact—which resolves the alleged ambiguity that Respondent-Mother sees—is binding on appeal, as discussed above, Respondent-Mother's argument is meritless. As the guardian ad litem notes: "There is no ambiguity; it is clear that Respondent[-]Mother either took Karina to the ER when invasive physical exams were completed, or allowed the maternal grandparents to take her." Respondent-Mother's clarity argument is also overruled.

### 3. *Failure to Find Bad Faith*

Finally, we address Respondent-Mother's argument that the trial court erred "because even as written, the adjudicatory findings lack one necessary factual determination: that the reports of Karina's suspected sexual abuse were somehow made in bad faith."

First, this is essentially a policy argument, wherein Respondent-Mother

presages "a terrifying dilemma for any parent." According to Respondent-Mother: "If you withhold your suspicions [of sexual abuse] out of fear of being wrong, then you risk criminal liability; but if you report your suspicions and end up being wrong, then even if you acted in good faith, your mistaken reporting can be used against you and your family." But such rhetoric is ineffective, as we remain "an error-correcting body, not a policy-making or law-making one." *In re I.B.*, 262 N.C. App. 402, 408, 822 S.E.2d 472, 476 (2018) (citation omitted), *abrogated on other grounds by In re L.E.M.*, 372 N.C. 396, 831 S.E.2d 341 (2019).

Second, and more fundamentally, there is simply no requirement in our Juvenile Code that a parent's reports of suspected sexual abuse must be made in bad faith in order to adjudicate a juvenile as abused or neglected. In support of her contention, Respondent-Mother cites the immunity provision of N.C. Gen. Stat. § 7B-309, which states that a person who makes "a good-faith report of child abuse or neglect . . . is immune from any civil or criminal liability that might otherwise be incurred or imposed for that action provided that that person was acting in good faith." N.C. Gen. Stat. § 7B-309. She further cites our Supreme Court's statement that § 7B-309 "is intended to encourage citizens to report suspected instances of child abuse without fear of potential liability if [the] report [is] made in good faith." *Dobson v. Harris*, 352 N.C. 77, 82, 530 S.E.2d 829, 835 (2000). These citations are unavailing.

As SCDSS aptly observes, "the adjudication of a child as neglected or abused is not a matter of monetary damages or 'civil liability' for her parents. As such, the

cooperation requirement of N.C. Gen. Stat. § 7B-309 cannot provide 'cover' against adjudications of abuse or neglect."

Moreover, with specific regard to neglect, it is well established that "[i]n determining whether a child is neglected, the determinative factors are the circumstances and conditions surrounding the child, not the fault or culpability of the parent." *In re Montgomery*, 311 N.C. 101, 109, 316 S.E.2d 246, 252 (1984).[2]

Indeed, this Court recently reviewed a similar case involving a mother's treatment of her children amidst an investigation of reported allegations of sexual abuse against the children's father. *In re B.C.*, No. 23-830, 2025 WL 850051, slip op. at *5 (N.C. App. Mar. 19, 2025). "[A]lthough the DSS investigation into the allegations of the father's alleged sexual abuse remained ongoing, DSS was sufficiently concerned about [the r]espondent-[m]other's actions to file juvenile petitions" alleging that the children were abused, neglected, and dependent. *Id.* On appeal, the respondent-mother argued, *inter alia*, "that she was not able to present 'a full defense'" because "she was not able to present evidence that the father had

---

[2] Respondent-Mother claims that this oft-cited precedent is no longer good law, asserting that recent legislative amendments to N.C. Gen. Stat. § 7B-101(15) have "brought the definition of 'neglected juvenile' in line with that for 'abused juvenile,' which is likewise written in terms of the parent's (or other caregiver's) actions, rather than the child's conditions or circumstances." (Citation omitted). We disagree.

Notwithstanding the supposedly precedent-altering legislative amendments that Respondent-Mother cites, this Court has continued to cite this well-known proposition from *Montgomery* as good law. *See, e.g., In re M.C.*, 286 N.C. App. 632, 641, 881 S.E.2d 871, 878 (2022). Our Supreme Court has not overruled *Montgomery*, "and this Court is bound by precedent from our Supreme Court." *In re N.R.R.N.*, ___ N.C. App. ___, ___, 911 S.E.2d 510, 516 (2025).

sexually abused [the children] such that her actions in light of that belief were justified, appropriate, and could not have constituted abuse or neglect of the children." *Id.* at *20. This Court was unpersuaded and instead approvingly cited the trial court's findings that the respondent-mother did "not appear to understand the nuances of what DSS's investigation entailed"; "that DSS's role was to monitor and try to create a plan"; and further, that "*whether the father ha*[*d*] *sexually abused these children or not* and *whether the sexual abuse happened or not*, [the children] ha[d] been traumatized by the way that [the r]espondent-[m]other ha[d] handled the situation with them." *Id.* at *23 (cleaned up).

Here, Respondent-Mother's claim that the trial court erred by failing to make an adjudicatory finding of bad faith is likewise misguided and reflects a similar misunderstanding of the focus of the proceedings at the adjudication phase. As illustrated by *B.C.*, when a parent's reports of sexual abuse precipitate further investigation in an ongoing juvenile case, the proper focus of the trial court in an adjudication hearing is on *the effect of those reports—and their investigation—on the child*, not the sincerity of the parent's reporting. *See id.* at *19.

This argument is also overruled.

### III.   Conclusion

For the foregoing reasons, the trial court's adjudicatory order is affirmed. Because Respondent-Mother raises no independent arguments concerning the disposition order or the private custody order, those orders are also affirmed.

AFFIRMED.

Judges STROUD and COLLINS concur.