IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-644

Filed: 19 January 2016

Madison County, No. 13 JT 13-15

IN THE MATTER OF: C.R.B, D.G.B., and C.M.B.

Appeal by respondent-mother from orders entered 24 February 2015 by Judge Hal G. Harrison in Madison County District Court. Heard in the Court of Appeals 16 December 2015.

> *Leake & Stokes, by Larry Leake, for petitioner-appellee Madison County Department of Social Services.*
>
> *Parker Poe Adams & Bernstein LLP, by Jason R. Benton, for Guardian ad Litem.*
>
> *Michael E. Casterline, for respondent-appellant mother.*

CALABRIA, Judge.

Respondent-mother ("Mother") appeals from the trial court's orders terminating her parental rights to the minor children C.B., D.B., and C.B. ("the children"). For the reasons that follow, we affirm.

## I. Background

In January 2013, petitioner Madison County Department of Social Services ("DSS") conducted a "family assessment" of Mother and the children after six-year-old D.G.B. was discovered unattended in a car. During the assessment, "other concerns regarding the family became apparent." Specifically, Mother suffers from

numerous debilitating mental illnesses as well as substance dependence and an "[e]xtremely [l]ow" intellectual capacity. The majority of Mother's infirmities stem from years of sexual and physical abuse that she suffered at the hands of her father. Due to this myriad of mental and physical health issues, Mother was unable to provide proper care for the children.

Although the children's maternal grandmother had been assisting in their care, DSS expressed concern over her ability to appropriately supervise the children. Consequently, after DSS filed petitions alleging neglect and dependency, it obtained non-secure custody of the children in March 2013 and placed them in foster care. Shortly thereafter, Mother consented to the entry of an order that adjudicated the children to be neglected. Mother then signed a case plan formulated to address, *inter alia*, her mental health, substance abuse, and intellectual disability issues. As part of the plan toward Mother's reunification with the children, DSS worked "directly with [the] October Road-Assertive Community Treatment Team to insure that all [of Mother's] medical and mental needs [were] met." By attending all scheduled DSS meetings, completing a domestic violence education program, and undergoing a parenting capacity evaluation, Mother accomplished certain goals contained in her case plan. She also attended weekly supervised visits with the children. However, Mother failed to complete a substance abuse assessment. Mother's visitation was suspended in September 2013 upon recommendation of the children's therapist. At

that time, Mother had not completed the October Road program, and in January 2014, the permanent plan was changed from reunification to adoption.

In March 2014, DSS filed petitions to terminate Mother's and the unknown father(s)' parental rights to the children. The petitions alleged that five statutory grounds existed to terminate Mother's parental rights. When the trial court conducted its termination hearing on 12 January 2015, Mother was in Georgia and claimed she was unable to secure transportation back to North Carolina. Her counsel moved the court for a continuance, but the motion was denied.

At the termination hearing, social worker Shanna Young ("Young") testified on behalf of DSS. Her testimony was based, in part, on the DSS report ("the report") filed with the trial court on 6 January 2015 in anticipation of the 12 January hearing. The report contained other DSS updates which had been addressed to and filed with the trial court at previous hearings on this matter. Mother repeatedly objected to Young's testimony from the case file as hearsay, but the trial court overruled each of those objections. The trial court also denied Mother's motion to strike the portions of Young's testimony regarding events and circumstances that occurred before August 2014, the time at which Young was assigned to work on the children's cases.

On 24 February 2015, the trial court entered adjudication and disposition orders terminating Mother's parental rights. The court concluded that two grounds existed to terminate Mother's parental rights: (1) her failure to make reasonable

progress to correct the conditions that led to the children's removal from her care, and (2) her inability to provide the proper care or supervision for the children coupled with a reasonable probability that such inability would continue for the foreseeable future. *See* N.C. Gen. Stat. § 7B-1111(a)(2), (6) (2013). As a result, the court determined that terminating Mother's parental rights was in the children's best interests. Mother appeals from these orders.

## II. Analysis

Trial courts conduct termination of parental rights proceedings in two distinct stages: adjudication and disposition. *In re Montgomery*, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984). At "the adjudication stage, the trial court must determine whether there exists one or more grounds for termination of parental rights under N.C. Gen. Stat. § 7B–1111(a)." *In re D.H.*, ___ N.C. App. ___, ___, 753 S.E.2d 732, 734 (2014); *see also* N.C. Gen. Stat. § 7B–1109(e) (2013). Our appellate review of the adjudication is limited to determining whether clear, cogent, and convincing evidence exists to support the court's findings of fact, and whether the findings of fact support the court's conclusions of law. *In re Huff*, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000). Even if there is evidence to the contrary, the trial court's findings are binding on appeal when "supported by ample, competent evidence[.]" *In re S.C.R.*, 198 N.C. App. 525, 531, 679 S.E.2d 905, 909 (2009). However, we review conclusions of law *de novo*. *In re J.S.L.*, 177 N.C. App. 151, 154, 628 S.E.2d 387, 389 (2006).

"If the trial court determines that at least one ground for termination exists, it then proceeds to the disposition stage where it must determine whether terminating the rights of the parent is in the best interest[s] of the child, in accordance with N.C. Gen.[]Stat. § 7B–1110(a)." *D.H.*, ___ N.C. App. at ___, 753 S.E.2d at 734. We review the trial court's determination of the child's best interests for an abuse of discretion, *In re Anderson*, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002), which occurs only when "the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

Pursuant to N.C. Gen. Stat. § 7B–1111(a)(2), a court may terminate parental rights when "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than [twelve] months  without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7–1111(a)(2).

> A finding of willfulness here does not require proof of parental fault. On the contrary, [w]illfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort. A finding of willfulness is not precluded even if the respondent has made *some* efforts to regain custody of [her child].

*In re A.W*, ___ N.C. App. ___, ___, 765 S.E.2d 111, 115 (2014) (internal quotation marks and citations omitted). "This standard operates as a safeguard for children. If

parents were not required to show both positive efforts and positive results, 'a parent could forestall termination proceedings indefinitely by making sporadic efforts for that purpose.' " *In re B.S.D.S.*, 163 N.C. App. 540, 545, 594 S.E.2d 89, 93 (2004) (quoting *In re Nolen*, 117 N.C. App. 693, 700, 453 S.E.2d 220, 225 (1995)).

Mother first argues that the following two findings in the trial court's adjudication order are based on improperly admitted hearsay testimony:

> 19. [Mother] did have diagnostic testing, showing the IQ of 53, with very little ability to function. The record reflects that [Mother] had a parental capacity evaluation by Dr. Mary DeBeus, which reported that due to her low functioning level, additional testing could not be completed. During the twenty-two (22) months that the juveniles have been in the custody of [DSS], [Mother] has failed to complete her Court Ordered case plan, in large part due to [Mother's] mental health diagnoses of cyclical mood disorder involving psychotic features, post-traumatic stress disorder, poly-substance dependence, bipolar disorder, borderline personality disorder, and traumatic brain injury. Her mental health status has resulted in cycles of hospitalization, with stabilization of her symptoms after hospitalization, then digression upon her return home. [Mother] is unable to care for herself or her hygiene; is unable to provide adequate care for her children; and her symptoms are triggered by the stress of being around the juvenile and his siblings.
> . . .
>
> 21. There was no documentation of a substance abuse assessment, and at the time of [DSS] being relieved of its efforts in the fall of 2013, . . . Mother had not completed the October Road Program.

Specifically, Mother contends the trial court erred by admitting the portions of

Young's testimony in which she relied on information contained in DSS's report.

In Mother's view, because Young read from the report and testified "to circumstances and events about which she had no first-hand knowledge," a significant amount of her testimony constituted inadmissible hearsay and provided the evidentiary support for findings of fact 19 and 21. According to Mother, since these findings were "critical" to the trial court's conclusion that her parental rights should be terminated based, in part, on her failure "to show progress in alleviating the causes of the children's removal" pursuant to subdivision 7B–1111(a)(2), there would have been "insufficient competent evidence to support th[is] ground[] for termination" if the court had properly sustained Mother's hearsay objections to Young's testimony. We disagree.

Generally, a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." N.C. Gen. Stat. § 8C–1, Rule 602 (2013). Furthermore, " '[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C–1, Rule 801(c) (2013). Unless allowed by statute or the Rules of Evidence, hearsay evidence is not admissible in court. N.C. Gen. Stat. § 8C–1, Rule 802 (2013). This Court has previously determined that even though a witness's knowledge was "limited to the contents of [the] plaintiff's file with which he had familiarized himself, he could

properly testify about the records and their significance so long as the records themselves were admissible under the business records exception to the hearsay rule[.]" *U.S. Leasing Corp. v. Everett, Creech, Hancock and Herzig,* 88 N.C. App. 418, 423, 363 S.E.2d 665, 667 (1988).

Pursuant to the business records exception, the following items of evidence are not excluded by the hearsay rule, even though the declarant is unavailable as a witness:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

N.C. Gen. Stat. § 8C–1, Rule 803(6) (2013). Qualifying business records are admissible under Rule 803(6) "when a proper foundation . . . is laid by testimony of a witness who is familiar with the . . . records and the methods under which they were made so as to satisfy the court that the methods, the sources of information, and the time of preparation render such evidence trustworthy." *In re S.D.J.*, 192 N.C. App. 478, 482, 665 S.E.2d 818, 821 (2008) (citations and internal quotation marks omitted).

In the instant case, Mother is wrong to suggest that Young was not qualified

to introduce and testify to the report, which was comprised of the DSS business records in question. "While the foundation must be laid by a person familiar with the records and the system under which they are made, there is 'no requirement that the records be authenticated by the person who made them.' " *Id.* at 482–83, 665 S.E.2d at 821 (citation omitted); *see also Barber v. Babcock & Wilcox Constr. Co.*, 98 N.C. App. 203, 208, 390 S.E.2d 341, 344 (1990) (under Rule 803(6), safety specialist for defendant-employer was qualified to authenticate and introduce the results of a test performed by a private laboratory because "he was familiar with the system used by his company in obtaining tests and filing the results with his office"), *reversed on other grounds on reh'g*, 101 N.C. App. 564, 400 S.E.2d 735 (1991). Not only was Young familiar with the report, she personally signed it and appears to be one of its authors.

Furthermore, although the report was never offered into evidence at the termination hearing, the majority of its contents—previous DSS updates addressed to the trial court—had been admitted at prior hearings, and the report as a whole would have been admissible under the business records exception to the hearsay rule. Specifically, Young testified that she had reviewed and was familiar with DSS's case file on this matter, that she had kept and maintained the file since her employment with DSS, and that the file's contents were maintained during the "regular, ordinary course of [DSS's] business." Given this foundation, Young's testimony regarding matters contained in DSS's business records—namely, the circumstances and events

underlying the petition to terminate Mother's parental rights—was clearly admissible under the rule announced in *U.S. Leasing Corp.* It is equally clear that Young's testimony amply supported the challenged findings.

### III. Conclusion

In sum, we conclude that findings 19 and 21 were fully supported by Young's testimony, which was admissible under the business records exception to the hearsay rule. These findings, which are based on clear, cogent, and convincing evidence, support the trial court's conclusion that a sufficient ground pursuant to subdivision 7B-1111(a)(2) existed to terminate Mother's parental rights to the children based on her willfulness in leaving the children in foster care for at least twelve months and her failure to make reasonable progress in correcting the conditions that led to the their removal from her care. Finding 21 specifically demonstrates that Mother failed to complete vital portions of her case plan while the children were in foster care. Accordingly, the trial court did not abuse its discretion by determining that the termination of Mother's parental rights was in the best interests of the children. Since "[a] valid finding on one statutorily enumerated ground is sufficient to support an order terminating parental rights[,]" we need not address Mother's remaining arguments challenging the other ground for termination found by the trial court. *In re Greene*, 152 N.C. App. 410, 416, 568 S.E.2d 634, 638 (2002) (citations omitted; second alteration added).

AFFIRMED.

Judges ELMORE and ZACHARY concur.