An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-591

Filed 18 March 2026

Pitt County, No. 23JT000193-730

IN THE MATTER OF:

R.C.

Appeal by respondent from order entered 18 March 2025 by Judge Lee F. Teague in Pitt County District Court. Heard in the Court of Appeals 11 February 2026.

> *The Law Office of Lisa Noda, PLLC, by Lisa Noda, for respondent-appellant mother.*

> *Miller & Audino, LLP, by Jay Anthony Audino, for petitioner-appellee Pitt County Department of Social Services.*

> *Administrative Office of the Courts, by N.C. GAL Appellate Counsel Matthew D. Wunsche, for guardian ad litem.*

FLOOD, Judge.

Respondent-Mother appeals from the trial court's order terminating her parental rights to her minor child, R.C. ("Rowan").[1] On appeal, Respondent-Mother

---

[1] A pseudonym is used to protect the identity of the minor child and for ease of reading pursuant to N.C. R. App. P. 42(b).

argues the trial court erred by admitting hearsay evidence and testimony lacking personal knowledge in violation of North Carolina Rules of Evidence 602 and 802. After careful consideration, we affirm the trial court's order.

## I. Factual and Procedural Background

Rowan was born prematurely, at thirty-three weeks, to Respondent-Mother on 2 November 2023. When he was born, Rowan tested positive for cocaine, opiates, and THC. Due to his low birth weight and other medical concerns, Rowan had to stay in the neonatal intensive care unit ("NICU") until he was released on 20 November 2023. On the same day Rowan was released from the NICU, the Pitt County Department of Social Services ("PCDSS") filed an order seeking nonsecure custody of Rowan, which the Pitt County District Court granted.

On 4 January 2024, the trial court entered an order adjudicating Rowan as a dependent and neglected juvenile. In the order, the trial court found as fact that Respondent-Mother has two other children that were adjudicated neglected and dependent on 20 July 2023 and since the adjudication of her other two children, Respondent-Mother "has continued to use drugs, including cocaine and marijuana." The trial court also found that at the time Rowan was born, Respondent-Mother did not have a stable home, and PCDSS tried to find a temporary safety placement for Rowan but was unsuccessful. As the result of the adjudication, the trial court ordered legal custody and placement to remain with PCDSS and ordered Respondent-Mother to do the following:

a. Complete a mental health evaluation and comply with all recommendations.

b. Complete a substance abuse assessment and follow all recommendations.

c. Maintain communication with DSS and sign any releases as requested.

d. Submit to drug screens, random or otherwise, including hair follicle screens, as requested.

e. Obtain and maintain sufficient and stable income and housing and provide proof of efforts to do so.

f. Address pending criminal charges.

g. Complete a parenting class and demonstrate skills learned.

h. Obtain a psychological evaluation and follow all recommendations.

Respondent-Mother was also ordered to have "supervised visitation every two weeks for two hours" with Rowan.

Nine months later, on 6 September 2024, PCDSS filed a petition to terminate the parental rights of Respondent-Mother and Respondent-Father.[2] In the petition, PCDSS alleged that there were grounds to terminate Respondent-Mother's parental rights based on neglect, willful failure to pay a reasonable portion of the cost of care, dependency, and willful abandonment. PCDSS further alleged Respondent-Mother failed to comply with the court's order; was incarcerated on 25 March 2024 for

---

[2] Although the trial court also terminated Respondent-Father's parental rights to Rowan, Respondent-Father does not appeal.

"damage [to] property, resisting a public officer, and [Failure to Appear]-misdemeanor larceny"; "completed one drug screen . . . which was positive for THC"; "has rarely visited [Rowan], has not provided for the care or support of [Rowan], and has not made efforts toward reunification"; and "remains unable to care for [Rowan] and has not named an appropriate alternative placement. Maternal great grandmother . . . has guardianship of [Rowan]'s other siblings. [Maternal great grandmother] has indicated that she is not an option for [Rowan] as it would be too much for her."

At that adjudication hearing, held on 27 February 2025, the trial court took judicial notice of findings of fact and the decretal portion of the 4 January 2024 adjudication order, the nonsecure custody order filed on 17 November 2023, and two permanency planning orders. The trial court also heard testimony from Social Worker Kimberly Hill; Social Worker Olivia Contreras; the Guardian ad Litem ("GAL") supervisor, Lauren McCarthy; Respondent-Mother; and Respondent-Father.

Social Worker Hill testified that Rowan's case was assigned to her after he was adjudicated as a dependent and neglected juvenile in January 2024. Social Worker Hill also explained that, as a permanency-planning social worker, she prepared the court reports for the permanency planning hearings and attended the court hearings. Without objection from Respondent-Mother's trial counsel, Social Worker Hill testified that Respondent-Mother was incarcerated "from December 18, 2023, to February 23, 2024[,] [] was then incarcerated from March 25, 2024, to May 23, 2024[,]

[a]nd then from July to November of 2024 she was in and out"; never completed a mental health evaluation; never completed a parenting class; never completed a psychological evaluation; returned one negative drug screen; and, while she never had employment while Social Worker Hill was working at PCDSS, she did mention to Social Worker Hill that she was "trying to find a job[.]"

Respondent-Mother testified that, as of the date of the hearing, she would be willing to do a drug test but that it would probably be positive for marijuana and cocaine, she was living with her grandmother, and she did not have a job. She further testified about an incident that led to Respondent-Father being charged with "assaulting [her] with a machete":

> A. He did not mean to assault me. He didn't hurt me. He didn't hurt me.
>
> Q. What did he do with a machete?
>
> A. It don't matter. He didn't hurt me.
>
> Q. What did he do with the machete?
>
> A. What you think he did?
>
> THE COURT: You can't ask [the PCDSS attorney] questions.
>
> Q. I'm asking you what he did with the machete, ma'am?
>
> A. He hit me on my leg with it by accident.
>
> Q. Did it cause a cut?
>
> A. Yes.

Q. Did it bleed?

A. Yes.

Q. Did you get medical attention?

A. Yeah.

Respondent-Father confirmed the assault charge by testifying, without objection from Respondent-Mother's trial counsel, that he was on probation for assault with a deadly weapon for the case where the charge was that he assaulted Respondent-Mother with a machete.

Social Worker Contreras testified that she was assigned Rowan's case when Social Worker Hill left PCDSS in December 2024, and that she had "reviewed the file [for Rowan] in totality[,]" the adjudication and disposition order, and "the last three permanency planning reviews." Additionally, GAL McCarthy testified that she had been working with Respondent-Mother since "either late 2022/early 2023" and "[t]he only person that had ever been potentially spoke[n] of [for an alternative child care arrangement] was . . . [R]espondent[-M]other's grandmother and she already has the two other children and just didn't have space for a third."

On 18 March 2025, the trial court entered an order adjudicating that grounds existed to "terminate the parental rights of [Respondent-Mother] . . . pursuant to N.C.G.S. § 7B-1111(a)(1)[,] (3)[,] (6)[, and] (7)." On the same day, the trial court entered a second order terminating Respondent-Mother's parental rights, concluding "[s]ufficient grounds have already been found . . . pursuant to N.C.G.S. § 7B-1111"

and that termination was in Rowan's best interests. Respondent-Mother timely filed her notice of appeal on 26 March 2025.

## II. <u>Jurisdiction</u>

This Court has jurisdiction over Respondent-Mother's appeal pursuant to N.C.G.S. § 7B-1001(a)(7) (2023).

## III. <u>Standard of Review</u>

"A proceeding to terminate parental rights is a two[-]step process with an adjudicatory stage and a dispositional stage. A different standard of review applies to each stage." *In re D.R.B.*, 182 N.C. App. 733, 735 (2007). "At the adjudication stage, the petitioner bears the burden of proving by clear, cogent, and convincing evidence that one or more grounds for termination exist under N.C.G.S. § 7B-1111(a)." *In re R.D.*, 376 N.C. 244, 248 (2020). On appeal, our standard of review is "whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re E.H.P.*, 372 N.C. 388, 392 (2019) (citations omitted). "Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." *In re S.M.*, 375 N.C. 673, 682 (2020) (citation omitted). "The trial court's conclusions of law are reviewable de novo on appeal." *Id.* (citation omitted).

At the dispositional stage, "the trial court determines whether termination of the parent's rights is in the child's best interest[.]" *In re K.J.E.*, 288 N.C. App. 325, 326 (2023). We review "[t]he trial court's assessment of a juvenile's best interests at

the dispositional stage . . . for abuse of discretion." *In re E.H.P.*, 372 N.C. at 392 (citation omitted). "[A]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re A.U.D.*, 373 N.C. 3, 6 (2019) (alteration in original) (citation omitted).

## IV. <u>Analysis</u>

Respondent-Mother argues the trial court erred by admitting hearsay evidence and testimony lacking personal knowledge, in violation of North Carolina Rules of Evidence 602 and 802. Specifically, Respondent-Mother argues the trial court erred by allowing the social workers to testify about information in the PCDSS file that they lacked personal knowledge about and that "contained impermissible hearsay . . . ." Further, Respondent-Mother challenges "all findings of fact based on" the testimony of Social Workers Hill and Contreras.

"[T]he North Carolina Rules of Evidence apply at the adjudication stage of these juvenile proceedings." *In re A.J.*, 386 N.C. 409, 412 (2024) (citing N.C.G.S. § 7B-804 (2023)). Under Rule 602 of the North Carolina Rules of Evidence, a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." N.C.G.S. § 8C-1, Rule 602 (2023).

Additionally, as a general rule, hearsay is inadmissible unless a statutory exception applies. N.C.G.S. § 8C-1, Rule 802 (2023). Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in

evidence to prove the truth of the matter asserted." N.C.G.S. § 8C-1, Rule 801(c) (2023). "[S]tatements that constitute inadmissible hearsay are not clear, cogent, and convincing evidence on which the trial court may rely." *In re A.J.*, 386 N.C. at 412 (citations omitted). One exception to the general rule is if the statement "is offered against a party and it is [] [her] own statement, in either [her] individual or a representative capacity[.]" N.C.G.S. § 8C-1, Rule 801(d) (2023). "In termination of parental rights proceedings, the party whose rights are sought to be terminated is a party adverse to DSS in the proceeding." *In re S.W.*, 175 N.C. App. 719, 723 (2006) (citation omitted).

Moreover, we have held "that even though a witness's knowledge was limited to the contents of the [DSS] file with which he had familiarized himself, he could properly testify about the records and their significance so long as the records themselves were admissible under the business records exception to the hearsay rule." *In re C.R.B.*, 245 N.C. App. 65, 69 (2016) (citation modified).

Under the business records exception, "business records of regularly conducted activity are not excluded by the hearsay rule[.]" *In re S.D.J.*, 192 N.C. App. 478, 482 (2008) (citing N.C.G.S. § 8C-1, Rule 803(6) (2007)). A business record is defined as

> [a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if (i) kept in the course of a regularly conducted business activity and (ii) it was the regular practice of that business activity to make the memorandum, report, record, or data compilation . . . .

N.C.G.S. § 8C-1, Rule 803(6) (2023). A business record is admissible under Rule 803(6) "when a proper foundation is laid by testimony of a witness who is familiar with the records and the methods under which they were made so as to satisfy the court that the methods, the sources of information, and the time of preparation render such evidence trustworthy." *In re C.R.B.*, 245 N.C. App. at 70 (citation and ellipses omitted). "While the foundation must be laid by a person familiar with the records and the system under which they are made, there is no requirement that the records be authenticated by the person who made them." *Id.* (citations and internal quotation marks omitted).

Furthermore, "[i]n a bench trial, the rules of evidence are not so strictly enforced as in a jury trial[,] and it will be presumed that the judge disregarded any incompetent evidence that may have been admitted unless it affirmatively appears that he was influenced thereby." *In re L.O.K.*, 174 N.C. App. 426, 433 (2005) (citation and internal quotation marks omitted); *see also In re I.E.M.*, 379 N.C. 221, 226 (2021) (concluding the respondent did not rebut the presumption the trial court disregarded any incompetent evidence because she "failed to identify any inadmissible hearsay evidence upon which the trial court erroneously relied in the course of making the findings of fact"). "Where there is competent evidence to support the court's findings, the admission of incompetent evidence is not prejudicial." *In re McMillon*, 143 N.C. App. 402, 411 (2001).

"When assessing whether a particular finding is supported by clear, cogent,

and convincing evidence, the reviewing court must consider any *properly preserved* challenges to the admission of the supporting evidence." *In re A.J.*, 386 N.C. at 412 (emphasis added) (citation omitted). "[T]o preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P 10(a)(1) (2025). Where the respondent fails to object to testimony, her challenge to that evidence on appeal is waived and "the testimony must be considered competent evidence." *In re F.G.J.*, 200 N.C. App. 681, 693 (2009).

Here, although Respondent-Mother challenges "all" factual findings based on the testimony of Social Worker Contreras and Social Worker Hill, Respondent-Mother's trial counsel only made six objections based on personal knowledge and inadmissible hearsay evidence during each of the social workers' respective testimonies. As the reviewing court, we consider the challenges only to the admission of evidence that Respondent-Mother properly preserved. *See In re A.J.*, 386 N.C. at 412.

Respondent-Mother's first challenge concerns an objection to the following exchange between the PCDSS Attorney and Social Worker Hill:

> [PCDSS Attorney:] And during your time with the case and being involved with the case how would you characterize your contact and your communication with the respondent mother?

[Social Worker Hill:] With the [R]espondent[-M]other it was very sporadic during my time working with her. She was in and out of jail.

[PCDSS Attorney:] And if you know or if she told you, what were some of the things that she was in jail for?

[Social Worker Hill:] So I had --

[Respondent-Mother's Attorney]: Objection. Unless she has personal knowledge.

[PCDSS Attorney]: Your Honor, I believe the question was if she knew or if the mother told her. That would be an admission by the mother.

THE COURT: Overruled.

[Social Worker Hill:] Charges range from felony and misdemeanor larceny to shoplifting. Also she ended up with damage to property, resisting a public officer, failure to appear, failure to appear for possession of cocaine and marijuana and felony larceny.

Here, the trial court correctly overruled Respondent-Mother's objection because Social Worker Hill testified about what Respondent-Mother, who is a party opponent*, see In re S.W.,* 175 N.C. App. at 723, told her. Since Respondent-Mother's statement was an admission of a party opponent, Social Worker Hill's testimony was not hearsay. *See* N.C.G.S. § 8C-1, Rule 801(d). As such, the trial court did not err by admitting Social Worker Hill's testimony regarding Respondent-Mother's criminal charges.

Respondent-Mother's second challenge concerns an objection to the following exchange:

[PCDSS Attorney:] And in your review of the case and in your looking at the Department's business records and case files in this case, does [Respondent-Mother] struggle with substance abuse?

[Respondent-Mother's Attorney]: Object [sic] as to her view of the case records. I ask that it just be personal knowledge.

THE COURT: Overruled.

[Social Worker Hill:] Yes. She does.

Assuming *arguendo* that Social Worker Hill's testimony was inadmissible, Respondent-Mother has failed to show that the trial court relied on this part of Social Worker Hill's testimony. Without objection from Respondent-Mother's trial counsel, Respondent-Mother herself testified that she would test positive for marijuana and cocaine and that she was "a heavy smoker" and "was smoking every day." Further, during cross-examination, Respondent-Mother testified that it was difficult to admit to the court her struggles with domestic violence and substance abuse. This competent evidence, *see In re F.G.J.*, 200 N.C. App. at 693, supports Finding of Fact 13, which states:

> The Respondent-Mother has continued to use illegal drugs, including cocaine and marijuana, through the course of her involvement with [PCDSS] and the Juvenile Court. In her testimony before the [c]ourt at this hearing, she informed the [c]ourt that if screened, she would likely test positive for marijuana and cocaine. The [c]ourt finds as a fact that the Respondent[-]Mother has recently used marijuana and cocaine. She testified that she had been a regular use[r] of crack. The [c]ourt finds as fact that Respondent[-]Mother has regularly used crack.

Respondent-Mother's third challenge concerns an objection to Social Worker

Hill's explanation as to why Rowan was not placed with his maternal great grandmother:

> [PCDSS Attorney]: And in your work with the family did you ever discuss with [Rowan's maternal great grandmother] the possibility of placement of [Rowan] in her home?
>
> [Social Worker Hill:] I did not, but according to case history previous social workers had.
>
> [Respondent-Mother's Attorney]: Objection as to anything she doesn't personally know.
>
> [PCDSS Attorney]: Your Honor, I -- I'd argue she's allowed to testify about (inaudible) records of the Department (inaudible).
>
> THE COURT: Overruled.
>
> [Social Worker Hill:] [Rowan's maternal great grandmother] had reported that she couldn't take on a third child, it was too much for her with the two she already had, and she actually has several family members living with her.

Again, assuming *arguendo* that Social Worker Hill's testimony was inadmissible, Respondent-Mother has failed to show that the trial court relied on this part of Social Worker Hill's testimony. Moreover, Respondent-Mother did not object to GAL McCarthy's testimony that "[t]he only person that had ever been potentially spoke[n] of [for an alternative child care arrangement] was . . . [Respondent-Mother's] grandmother and she already has the two other children and just didn't have space for a third."

Respondent-Mother's fourth challenge concerns an objection to Social Worker

Hill's testimony when asked by the PCDSS Attorney about the incident resulting in

Respondent-Father being charged with assaulting Respondent-Mother:

> [PCDSS's Attorney:] What, if anything, did [Respondent-Mother] or [Respondent-Father] tell you about that?
>
> [Social Worker Hill:] They were in the car, had an argument, and he had --
>
> [Respondent Mother's Attorney]: I'm going to object unless she has personal knowledge.
>
> THE COURT: [Ad]mission [sic] by a party.
>
> [Social Worker Hill:] He had a machete and, for lack of better terms, whacked her on the knee with the blade part and she did require medical care.

Here, as the trial court alluded to, Social Worker Hill testified regarding

statements made by Respondent-Mother, who is an opposing party, *see In re S.W.*,

175 N.C. App. at 723. Such testimony is not hearsay because it is an admission of a

party opponent. *See* N.C.G.S. § 8C-1, Rule 801(d). Thus, Social Worker Hill's

testimony regarding the incident in which Respondent-Father hit Respondent-

Mother in the knee with a "machete" is admissible and is considered competent

evidence that may be used to support a finding of fact. *See In re S.W.*, 175 N.C. App.

at 723; *In re F.G.J.*, 200 N.C. App. at 693. But even if Social Worker Hill's statement

was inadmissible hearsay, Respondent-Mother herself testified that Respondent-

Father hit her leg with a machete "by accident[,]" and she had to get "medical

attention[.]" As such, even if Social Worker Hill's statement was inadmissible

hearsay, the admission of incompetent evidence is not prejudicial because of

Respondent-Mother's testimony. *See In re McMillon*, 143 N.C. App. at 411.

Respondent-Mother's fifth and sixth challenges concern objections as to the following exchange between the PCDSS Attorney and Social Worker Contreras:

> [PCDSS Attorney:] Did you hear the testimony of Social Worker [H]ill?
>
> [Social Worker Contreras:] I did.
>
> [PCDSS Attorney:] And with regard to her testimony she testified that she had made efforts to contact the parents. Did you hear the testimony of [R]espondent[-M]other?
>
> [Social Worker Contreras:] I did.
>
> [PCDSS Attorney:] And is it fair to say to characterize her testimony as --
>
> [Respondent Mother's Attorney]: Judge, I would object.
>
> [PCDSS Attorney:] -- denying that?
>
> [Respondent Mother's Attorney]: I would object and the basis is Your Honor heard both testimonies. I don't know why we would need her to regurgitate and give her interpretation of the testimony.
>
> THE COURT: Overruled. It's certainly up to the Court to determine (inaudible).
>
> [PCDSS Attorney:] (Inaudible) testimony of [R]espondent[-M]other?
>
> [Social Worker Contreras:] Yes, I did.
>
> [PCDSS Attorney:] And she asserted very strongly that the testimony that the [PCDSS] had not made efforts to contact her. In your review of the file did you find that to be accurate?
>
> [Respondent-Mother's Attorney]: Judge, I would object the

same objection. I think Social Worker Hill had the case at that point. If [the PCDSS Attorney] wants to recall Social Worker Hill, that's fine, but I would object.

THE COURT: Overruled.

[Social Worker Contreras:] There was documentation of contact attempts both from Ms. Hill and Ms. Clay in the case file.

[PCDSS Attorney:] And who's Ms. Clay?

[Social Worker Contreras:] Ms. Kelli Clay is my direct supervisor and at the time of Kimberly Hill's employment with the County DSS she was her direct supervisor as well.

To the extent that Respondent-Mother's trial counsel objected on the grounds of inadmissible hearsay or lack of personal knowledge, Social Worker Contreras's testimony was admissible because the PCDSS file, although not admitted as evidence, was admissible under the business records exception to the hearsay rule. *See In re C.R.B.*, 245 N.C. App. at 69. Prior to Social Worker Contreras's testimony, Social Worker Hill testified that, as the permanency planning social worker, she had prepared the court reports for the permanency planning hearings and attended the court hearings. When Social Worker Contreras testified, she confirmed that that she had reviewed and familiarized herself with the "business records and the file for this family at [PCDSS.]" Thus, while Social Worker Contreras's knowledge regarding PCDSS's attempts to contact Respondent-Mother was limited to the contents of the PCDSS file, she could properly testify about the records and their significance because the records were admissible under the business records exception. *See id.*

Even if we were to assume that Social Worker Contreras's testimony was inadmissible hearsay, Respondent-Mother has not shown that the trial court relied on Social Worker Contreras's testimony regarding PCDSS's attempts to contact Respondent-Mother. *See In re I.E.M.*, 379 N.C. at 226.

Respondent-Mother then specifically challenges Findings of Fact 17, 18, 20, 21, 25, 29, 31, 32, 33, 34, 37, 40, 41, 42 and 44 because "[i]t is unclear which parts of Social Worker Hill's testimony is coming from a review of the file, and which parts were from personal knowledge or review of her own notes or generated documents." Respondent-Mother argues these findings of fact are not supported by clear and convincing evidence and that Conclusion of Law 3 is not supported by sufficient findings of fact. Conclusion of Law 3 states: "By clear and convincing evidence as required by [N.C.G.S.] § 7B-1111(b), grounds exist to terminate the parental rights of the Respondent[-]Mother of the Juvenile pursuant to N.C.G.S. § 7B-1111(a)(1)[,] (3)[,] (6)[, and] (7)."

Our Supreme Court has explained that "[i]f [any] of the [four] grounds aforesaid is supported by findings of fact based on clear, cogent and convincing evidence, the order appealed from should be affirmed." *See In re Moore*, 306 N.C. 394, 404 (1982); *see also In re E.H.P.*, 372 N.C. at 392 ("We review a trial court's adjudication under N.C.G.S. § 7B-1111 to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." (citation and internal quotation marks omitted)). Since "a finding

of only one ground is necessary to support a termination of parental rights," we address only the trial court's conclusion regarding the basis for terminating Respondent-Mother's parental rights pursuant to N.C.G.S. § 7B-1111(a)(6). *See In re A.R.A.*, 373 N.C. 190, 194 (2019).

Under N.C.G.S. § 7B-1111(a)(6), a court may terminate the parental rights upon a finding

> [t]hat the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of [N.C.]G.S. [§] 7B-101, and that there is a reasonable probability that the incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, intellectual disability, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement.

N.C.G.S. § 7B-1111(a)(6) (2023). "To terminate parental rights on this ground, the court's findings must address (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements." *In re D.T.N.A.*, 250 N.C. App. 582, 584 (2016) (citation omitted).

Here, although Respondent-Mother specifically challenges several of the court's findings of fact on appeal, "we limit our review of challenged findings to those that are necessary to support the district court's" conclusion that grounds exist to terminate Respondent-Mother's parental rights pursuant to N.C.G.S. § 7B-1111(a)(6). *See In re A.R.A.*, 373 N.C. at 195. As mentioned, Respondent-Mother

challenges the following findings of fact:

> 40. The Respondent[-]Mother is not able to care for the Juvenile today. She has not demonstrated sobriety, obtained stable housing or employment, or addressed her mental health or substance abuse issues.
>
> 41. The Respondent[-]Mother is incapable of providing for the proper care and supervision of the Juvenile, such that the · Juvenile is a dependent Juvenile within the meaning of [N.C.]G.S. § 7B-101. There is a reasonable probability that such incapability will continue for the foreseeable future, and the Respondent[-]Mother lacks an appropriate alternative child care arrangement. The Juvenile remains dependent today, as the Respondent[-]Mother remains unable to care for the Juvenile and has not named an appropriate alternative placement.
>
> 42. No appropriate relatives or other individuals have been named or offered as placements for this Juvenile. [Rowan's maternal great grandmother] . . . is the legal guardian of [Respondent-Mother's] other children. [Rowan's maternal great grandmother] declined placement of the Juvenile in her home, because she was not able to care for him in addition to his siblings.

Respondent-Mother challenges these findings of fact because "[i]t is unclear which parts of Social Worker Hill's testimony [are] coming from a review of the file, and which parts were from personal knowledge or review of her own notes or generated documents." Even if this Court were to assume that Social Worker Hill's testimony was inadmissible, Respondent-Mother has not rebutted the presumption that the trial court disregarded inadmissible evidence in making its findings. *See In re L.O.K.*, 174 N.C. App. at 433. With respect to Respondent-Mother's unsuccessful efforts towards sobriety, Respondent-Mother herself testified that she would probably test

positive for marijuana and cocaine. With respect to her employment, Respondent-Mother testified that she did not have a job and has not "been to work since 2022." Further, with respect to an alternative placement, GAL McCarthy testified, without objection from Respondent-Mother, that Rowan's maternal great grandmother was unable to care for Rowan. As such, Findings of Fact 40, 41, and 42 are supported by competent evidence. These findings of fact also appropriately address Respondent-Mother's "ability to provide care or supervision," and her failure to identify "alternative child care arrangements." *See In re D.T.N.A.*, 250 N.C. App. at 584. As such, the trial court did not err in concluding the existence of grounds to terminate Respondent-Mother's parental rights to Rowan under N.C.G.S. § 7B-1111(a)(6) on the basis that Respondent-Mother was incapable of providing proper care and supervision for Rowan.

Since "a finding of only one ground is necessary to support a termination of parental rights," *In re A.R.A.*, 373 N.C. at 194, we need not address Respondent-Mother's arguments regarding N.C.G.S. § 7B-1111(a)(1), (3), and (7). Lastly, we need not review the trial court's determination that termination of Respondent-Mother's parental rights was in the best interests of Rowan because Respondent-Mother does not challenge the trial court's conclusion at the dispositional stage. Accordingly, we affirm the trial court's order terminating Respondent-Mother's parental rights to Rowan.

## V. <u>Conclusion</u>

Upon careful review, we conclude the trial court did not violate North Carolina Rules of Evidence 602 and 802, the findings were supported by clear and convincing evidence, and the findings support the conclusions of law. As such, the trial court's order terminating Respondent-Mother's parental rights to Rowan is affirmed.

AFFIRMED.

Chief Judge DILLON and Judge FREEMAN concur.

Report per Rule 30(e).